[Cite as *Widmyer v. Steak 'N Shake Operations, Inc.*, 2014-Ohio-5413.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOHN WIDMYER, | : | APPEAL NO. C-140051 |
| | | TRIAL NO. A-1206874 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| STEAK 'N SHAKE OPERATIONS, INC., | : | |
| | : | |
| and | | |
| | : | |
| JAMES BRAUNHEIM, | | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 10, 2014

*Croskery Law Offices* and *Robert F. Croskery*, for Plaintiff-Appellant,

*Thomas H. Barnard, John Gerak* and *Natalie M. Stevens,* for Defendants-Appellees.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}   Plaintiff-appellant John Widmyer appeals the summary judgment entered by the Hamilton County Court of Common Pleas in favor of defendants-appellees Steak 'n Shake Operations, Inc., and James Braunheim, in a suit for sexual harassment and retaliation under R.C. 4112.02

### Widmyer's Employment with Steak 'n Shake

{¶2}   Widmyer began working for Steak 'n Shake Restaurants in late 2011. After a training period, he was named a general manager of the Forest Park location. As a general manager, he was one of the persons tasked with scheduling and supervising the restaurant's hourly employees, accounting for receipts, and promoting sales.   Braunheim, a district manager in charge of numerous restaurant locations, was Widmyer's immediate supervisor.   Stephen Bishop, in turn, was a division president and Braunheim's supervisor.

{¶3}   Sarah White was hired as a manager at the Forest Park restaurant shortly after Widmyer had become general manager.  During all times relevant to the instant case, she was Widmyer's subordinate.

{¶4}   Although they rarely worked entire shifts together, Widmyer began having problems with White soon after she was hired.  In his deposition, Widmyer testified that, on multiple occasions, White had alluded to performing oral sex in the restaurant's broom closet with male employees.  Widmyer stated that she did not always direct the comments to him and that he had been informed of some of the comments by other employees.

{¶5}   In addition, Widmyer testified that, after he had returned to the restaurant one day, White asked him if he had been having sex with his wife.

2

Widmyer stated that, when he had expressed his disapproval of the comments, White had questioned his sexual orientation and had suggested that he was a pedophile. Widmyer testified that he had found White's comments to be offensive.

{¶6} Widmyer prepared a written reprimand for White, but he testified that she had torn it in pieces. When he reported the inappropriate comments to Braunheim, Braunheim allegedly stated that a woman could not sexually harass a man and that Widmyer could not be harassed because he was a general manager. Widmyer further testified that he had been coerced, under threat of termination, into signing a "performance audit" indicating that there were no unresolved problems concerning sexual harassment at the Forest Park location.

{¶7} Despite Widmyer's assertion that Braunheim had scoffed at his allegations of harassment, Braunheim did issue a "corrective action form" to White indicating that her behavior had been inappropriate. According to Braunheim, he had followed the directives of the company's human resources department in responding to Widmyer's concerns.

{¶8} Braunheim testified that, after Widmyer had been with Steak 'n Shake for a short time, he had begun missing shifts and failing to participate in mandatory meetings and conference calls. Because of this chronic absenteeism, Braunheim issued a corrective action form to Widmyer on May 15, 2012.

{¶9} On May 31, 2012, Widmyer was scheduled to work the morning shift. He did not report to work on time, and Braunheim and Bishop went to the Forest Park restaurant. After waiting for Widmyer for several hours, Bishop determined that he had essentially abandoned his job, and he made the decision to fire him. When Widmyer eventually called at 8:30 p.m., he was informed that his employment had been terminated. Bishop submitted an affidavit stating that he had not been

3

aware of Widmyer's complaints concerning sexual harassment at the time of the termination.

{¶10}  Widmyer filed suit, asserting causes of action for sexual harassment, wrongful discharge, retaliation, and intentional infliction of emotional distress.  The appellees filed a motion to dismiss the claims for wrongful discharge and intentional infliction of emotional distress under Civ.R. 12(B)(6), and the trial court granted that motion.  After further discovery, the trial court granted summary judgment in favor of the appellees with respect to the remaining claims.

{¶11}  In three related assignments of error, Widmyer argues that the trial court erred in granting the appellees' motion for summary judgment.

### The Trial Court's Consideration of the Appellees' Exhibits

{¶12}  Under Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.  *See State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).  This court reviews a ruling on summary judgment de novo.  *Jorg v. Cincinnati Black United Front,* 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781 (1st Dist.).

{¶13}  In his first assignment of error, Widmyer contends that the trial court erred in considering the evidentiary material submitted with the appellees' motion for summary judgment.

{¶14}  He first argues that the affidavits, excerpts of depositions, and other exhibits were not properly filed before the trial court's deadline of November 13,

2013. The record demonstrates that the appellees submitted their evidentiary material with their motion for summary judgment, which was filed on November 8, 2013. Nonetheless, Widmyer maintains that the trial court erred in considering the material because the appellees were required either to reference each exhibit in the caption of the motion or to separately file the material. *See* Loc.R. 14(C)(8) of the Court of Common Pleas of Hamilton County, General Division.

{¶15} This argument is without merit. Although the exhibits were not listed separately in the caption, the sheer number of exhibits would have made the caption unwieldy had they been identified individually. Moreover, the exhibits were separately referenced on the first page of the motion, and Widmyer has failed to demonstrate any unfair prejudice in their admission. As the local rule indicates, failure to include a document in the caption or to separately file the document "can result in its exclusion by the Court[,]" but exclusion is not mandatory. *Id.*

{¶16} Widmyer next argues that the material submitted by the appellees in support of their summary-judgment motion was not cognizable because it consisted only of conclusory and boilerplate assertions.

{¶17} Again, we are not persuaded. An affidavit or other exhibit that includes only legal conclusions is insufficient to meet the moving party's burden under Civ.R. 56. *See Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Honabarger v. Wayne Sav. Community Bank,* 9th Dist. Wayne No. 12CA0058, 2013-Ohio-2793, ¶ 15. But in this case, the material submitted by the appellees identified specific company policies, set forth the operative facts relating to the alleged harassment, and enumerated Widmyer's deficiencies as an employee. The trial court properly considered the material, and we accordingly overrule the first assignment of error.

### Summary Judgment and Sexual Harassment

{¶18} In his second assignment of error, Widmyer contends that the trial court erred in granting the motion for summary judgment on his sexual-harassment claim. R.C. 4112.02(A) makes it an unlawful discriminatory practice for an employer, because of the sex of an employee, to discriminate against the employee "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." *See Kilgore v. Ethicon Endo-Surgery, Inc.*, 172 Ohio App.3d 387, 2007-Ohio-2952, 875 N.E.2d 113, ¶ 23 (1st Dist.).

{¶19} To establish a claim of a hostile work environment based on sex, the plaintiff is required to show the following:

> (1) that the harassment was unwelcome; (2) that the harassment was based on sex; (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) that the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Id.* at ¶ 24. A court must examine the circumstances surrounding the alleged misconduct and consider them in the framework of a number of factors to determine if the employer's conduct is actionable. *Id.* at ¶ 26. Among those factors are the following: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating; and (4) whether the conduct was sufficiently egregious as to unreasonably interfere with the plaintiff's

work performance. *Id.* at ¶ 26; *Brandner v. Innovex, Inc.,* 1st Dist. Hamilton No. C-110401, 2012-Ohio-462, ¶ 16.

{¶20} In the case at bar, we find no error in the trial court's entry of summary judgment with respect to the sexual-harassment claim. The most that Widmyer alleged was that Sarah White had made him uncomfortable by her alleged misconduct and that Steak 'n Shake had failed to adequately address his concerns. The misconduct was sporadic, as Widmyer testified that he had rarely worked an entire shift with White. Moreover, not all of the comments were directed toward Widmyer, and he was not even present when a number of the comments were made. In any event, White's conduct, while boorish and crass, was not so outrageous or pervasive as to interfere with Widmyer's work performance. Accordingly, we overrule the second assignment of error.

**Retaliation**

{¶21} In his third and final assignment of error, Widmyer argues that the trial court erred in granting summary judgment in favor of Steak 'n Shake and Braunheim on his retaliation claim.

{¶22} To establish a prima facie case of retaliation under R.C. 4112.02(I), the plaintiff must prove that (1) he engaged in a protected activity, (2) the employer knew of his participation in the protected activity, (3) he suffered an adverse employment action, and (4) there was a causal relationship between the protected activity and the adverse action. *DuVall v. Time Warner Entertainment Co.*, 1st Dist. Hamilton No. C-980515, 1999 Ohio App. LEXIS 2874 (June 25, 1999).

{¶23} A causal relationship between the protected activity and the adverse employment action can be demonstrated through (1) direct evidence of a causal connection or (2) evidence of the employer's knowledge of the protected activity,

together with temporal proximity. *Nguyen v. Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). But "[t]he plaintiff cannot prevail if it appears from the evidence that the employer would have made the same decision regardless of the plaintiff's participation in the protected activity." *Neal v. Hamilton Cty.*, 87 Ohio App.3d 670, 678, 622 N.E.2d 1130 (1st Dist.1993).

{¶24} In this case, there was no error in the trial court's entry of summary judgment on the retaliation claim. In arguing his claim of retaliation, Widmyer relied on Braunheim's actions in the weeks prior to the termination to demonstrate an improper motive on the part of the appellees. He first cited Braunheim's allegedly derisive reaction to his report of White's conduct. And he pointed to Braunheim's alleged threat to terminate him if he did not sign the form indicating that there were no current problems with sexual harassment at the restaurant. These actions, Widmyer maintains, demonstrated an animus against him for reporting White's actions.

{¶25} We hold that there was no genuine issue of fact with respect to the element of causation. First, Braunheim did not summarily reject Widmyer's complaint about White; he responded in accordance with company policy by issuing a corrective action form to her. Second, Widmyer stated that he had *complied* with the alleged demand that he sign the sexual-harassment form, thus negating any inference that his intransigence about the issue had led to his firing. Third, the appellees produced uncontroverted evidence that the final decision to terminate Widmyer was made by Bishop and that Bishop had not been aware of Widmyer's sexual-harassment complaints prior to the firing. Rather, the evidence pointed to the termination being the direct result of Widmyer's absenteeism and his general dereliction of duty.

{¶26} Therefore, the trial court did not err in concluding that Widmyer had failed to demonstrate a prima facie case of retaliation, and we overrule the third assignment of error.

## Conclusion

{¶27} We affirm the judgment of the trial court.

Judgment affirmed.

**DINKELACKER** and **DEWINE JJ.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.